**ORIGINAL**

EDWARD H. KUBO, JR.         2499
United States Attorney

LARRY L. BUTRICK            3910
Chief, Criminal Division

MICHAEL K. KAWAHARA         1460
Assistant U.S. Attorney
Room 6-100, Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone: (808) 541-2850
Mike.Kawahara@usdoj.gov

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 25 2006

at __ o'clock and __ min. __ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIM. NO. 05-0300JMS-03 |
| Plaintiff, | ) | MEMORANDUM OF PLEA AGREEMENT |
| VS. | ) | [PAMELA MAHEALANI NEWTON] |
| LEANDRO GOMEZ, III, also (01) known as "Leo", | ) | |
| NATHANIEL RUSSELL, also (02) known as "Bobo" or "Bo", | ) | |
| PAMELA MAHEALANI NEWTON, (03) | ) | |
| JOHN CORNIEL, JR., (04) | ) | |
| CYRINAH L. AKEN, also (05) known as "Cyrinah L. Solomon", | ) | |
| CHARLES R.K. FARREN, (06) | ) | |
| REED KALEOOKALANI AKEN, (07) SENIOR, | ) | |
| ROGER MANU BATES, also (08) known as "Manu", | ) | |
| TIMOTHY JAMES SULLIVAN, (09) also known as "Tim", | ) | |
| GILBERT GOMEZ, also (10) known as "Glen", | ) | |
| Defendants. | ) | |

MEMORANDUM OF PLEA AGREEMENT
[PAMELA MAHEALANI NEWTON]

Pursuant to Rule 11 of the Federal Rules of Criminal

Procedure, the UNITED STATES OF AMERICA, by its attorney, the United States Attorney for the District of Hawaii, and the Defendant, PAMELA MAHEALANI NEWTON (hereinafter "defendant" or "Newton"), and her appointed attorney, Lynn E. Panagakos, Esq., of Honolulu, HI, have agreed upon the following:

    1.    Defendant acknowledges that she has been charged in the First Superseding Indictment returned July 28, 2005 (hereinafter "Indictment"), which charges her with the following crimes:

    (A) <u>Count 1</u>: Conspiring with her named defendants to distribute and to possess with intent to distribute five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, said offense occurring from a time unknown to the Grand Jury up through and including on or about July 21, 2005, in violation of 21 U.S.C. 846, 841(a)(1), and 841(b)(1)(A);

    (B) <u>Count 2</u>: Possession with intent to distribute five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, said offense occurring on or about May 13, 2005, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A);

    (C) <u>Count 3</u>: Possession with intent to distribute five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, said offense occurring on or about May 28, 2005, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A); and

    (D) <u>Count 4</u>: Possession with intent to distribute five-hundred (500) grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers, said offense occurring on or about June 9, 2005, in violation of 21 U.S.C. 841(a)(1) and 841(b)(1)(A).

Defendant has already received a copy of this Indictment.

2. Defendant has read the charges and allegations against her contained in the Indictment, and these charges have been fully explained to her by her attorney. In making her decision to plead guilty, defendant has had the full opportunity to consult with her undersigned defense attorney, and she is fully satisfied with the legal representation and advice she has received from her defense attorney.

3. Defendant fully understands the nature and elements of the crimes with which she has been charged.

4. Defendant will enter a voluntary plea of guilty to Count 1 of the Indictment (conspiracy to distribute/possess with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, and salts of its isomers). At the time of sentencing, the prosecution will dismiss Counts 2, 3, and 4 of the Indictment insofar as defendant herein is concerned.

5. Defendant agrees that this Memorandum of Plea Agreement shall be filed and become part of the record in this case.

6. Defendant enters this plea because she is in fact guilty of the crime charged against her in the Indictment, and she also agrees that this plea is voluntary and not the result of force or threats.

7. Defendant understands that the statutory penalties

for the offense to which she is pleading guilty is an imprisonment term of at least ten (10) years and up to life, a fine of up to $4,000,000, or both, and a term of supervised release of at least five (5) years and up to life. See 21 U.S.C. 841(b)(1)(A).

  A. At the discretion of the Court, defendant may also be denied any or all federal benefits, as that term is defined in 21 USC §862, (a) for up to five years if this is defendant's first conviction of a federal or state offense consisting of the distribution of controlled substances, or (b) for up to ten years if this is defendant's second conviction of a federal or state offense consisting of the distribution of controlled substances. If this is defendant's third or more conviction of a federal or state offense consisting of the distribution of controlled substances, the defendant is permanently ineligible for all federal benefits, as that term is defined in 21 USC §862(d).

  B. In addition, the Court must impose a $100 special assessment as to each felony count to which the Defendant is pleading guilty. Defendant agrees to pay $100 for each count to which he is pleading guilty to the District Court's Clerk's Office, to be credited to said special assessments, before the commencement of any portion of sentencing. Defendant acknowledges that failure to make such full advance payment in a

4

form and manner acceptable to the prosecution will allow, though not require, the prosecution to withdraw from this agreement at its option.

8. Defendant admits the following facts and agrees that they are not a detailed recitation, but merely an outline of what happened in relation to the charge to which Defendant is pleading guilty:

A. Up through July 21, 2005, co-defendant Nathaniel Russell (Newton's husband, also known as "Bobo") distributed methamphetamine on the Island of Maui, Hawaii, with the assistance of Newton and co-defendants John Corniel, Jr., and Cyrinah L. Aken. In numerous instances during this period of time, Newton would speak on Russell's behalf in her telephone calls with Corniel and Cyrinah Aken, and Russell's instructions to the latter two co-defendants would be issued through Newton.

B. Russell obtained his methamphetamine supply from defendant Leandro Gomez, III (also known as "Leo") in Las Vegas. Leandro Gomez was assisted in his methamphetamine trafficking activities by co-defendants Timothy James Sullivan and Gilbert Gomez.

C. Russell's primary methamphetamine buyers on Maui were co-defendants Roger Manu Bates and Charles R.K. Farren, each of whom purchased multi-pound quantities of the drug. After receipt of the methamphetamine from Las Vegas, Corniel would

deliver it to Bates and Farren, as well as picking up the drug purchase money from them. In many instances, the drug purchase money would thereafter be stored by Cyrinah Aken at her Maui residence. Both Corniel and Cyrinah Aken kept track of and accounted for the drug purchase monies and reported the same to Russell and Newton.

      D.  On or about May 11, 2005, Corniel received approximately four (4) pounds of methamphetamine in a UPS shipment from Leandro Gomez (hereinafter referred-to as "Subject Parcel #1"). From this methamphetamine shipment, Corniel delivered approximately two (2) pounds to Bates, and approximately 31 ounces of methamphetamine to Farren. Corniel "fronted" these 31 ounces of methamphetamine to Farren (i.e., provided it on credit), for which he (Farren) owed $49,000. Corneil also fronted the two pounds to Bates, for which he (Bates) owed $54,000.

      (1)  On May 13, 2005, Bates was arrested by Maui Police Department Officers, who at that time recovered the methamphetamine described in paragraph 10(a)(1)(I) of this Agreement from Bates' possession. This was the unsold remainder of the two pounds of methamphetamine which Bates had received from Corniel on or about May 11, 2005. Inasmuch as the methamphetamine provided by Corniel to Bates and Farren on or about May 11, 2005 came from the same source, the purity and

quality of the methamphetamine found in Bates' possession would be illustrative of the entire methamphetamine shipment sent in Subject Parcel #1.

       E.  On or about May 22, 2005, Farren gave $49,000 to Corniel at Cyrinah Akens' residence, in payment for the 31 ounces of methamphetamine previously fronted.  This money, along with other drug proceeds, was stored at Cyrinah Akens' residence, and was to be used to effect another methamphetamine purchase from Leandro Gomez.  On or about May 24, 2005, Bates gave Corniel $18,000 in partial payment for the $54,000 debt owed for the two pounds of methamphetamine previously fronted.  Corniel reported the receipt of these drug purchase monies to both Russell and Newton.

       F.  On May 25-26, 2005, co-defendant Reed Kaleookalani Aken traveled from Maui to Las Vegas, NV; he was also couriering approximately $66,000 in cash for the purpose of purchasing about seven (7) pounds of methamphetamine from Leandro Gomez; this purchase money included the $49,000 received from Farren and the $18,000 received from Bates.  Upon arrival, Reed Aken gave the money to co-defendant Gilbert Gomez, who in turn gave it to Leandro Gomez.  On May 28, 2005, Reed Aken was traveling back from Las Vegas to Maui, through Los Angeles.  While at the Los Angeles International Airport, Reed Aken was found to be externally bodycarrying (i.e., under the clothes he

was wearing) the methamphetamine more specifically described in paragraph 10(a)(1)(II) of this Agreement. Reed Aken had received this methamphetamine from Leandro Gomez in Las Vegas. This methamphetamine was seized by law enforcement officers.

G.  On June 9, 2005, Leandro Gomez and Timothy James Sullivan caused the following parcel to be mailed via United Parcel Service (UPS) from Las Vegas to Maui:

> One (1) UPS Parcel, bearing Tracking #1ZA2V1030175431754, bearing "UPS Next Day Air" labels and an indicated shipping weight of 7 pounds, with the sender being "Stock 2 Show, 905 S. Main St, Las Vegas, NV 89101, and the recipient being "Shawn Chong, 1110 Puana, Makawao, HI 96768" (hereinafter referred-to as "Subject Parcel #2").

Subject Parcel #2 contained the methamphetamine which is described in further detail in paragraph 10(a)(1)(III) of this Agreement, and constituted the remaining amount of the methamphetamine shipment paid-for with the money Reed Aken had transported to Las Vegas on May 25, 2005. This methamphetamine was seized by law enforcement officers.

H.  Not knowing at that time that the Subject Parcel #2 and its contents had been seized, Russell, Newton, Corniel, and Cyrinah Aken were awaiting its arrival in June 2005 on Maui, and they had a number of telephone conversations among themselves during this time concerning the status of this shipment. Had the methamphetamine in Subject Parcel #2 arrived on Maui, these defendants were planning to have it sold to

Farren, Bates, and other persons.

9. Pursuant to CrimLR32.1(a) of the Local Rules of the United States District Court for the District of Hawaii, the parties agree that the charge to which the Defendant is pleading guilty adequately reflects the seriousness of the actual offense behavior and that accepting this Agreement will not undermine the statutory purposes of sentencing.

10. Pursuant to CrimLR32.1(b) of the Local Rules of the United States District Court for the District of Hawaii and Section 6B1.4 of the Sentencing Guidelines, the parties stipulate to the following for the purpose of the sentencing of Defendant in connection with this matter:

    a.    <u>Factual stipulations</u>:

    (1) <u>Quantity of methamphetamine involved in Count 1</u>: As determined by the DEA Southwestern Laboratory, the methamphetamine involved in the conspiracy charge in Count 1 of the Indictment was determined to be as follows:

I. **Methamphetamine found in defendant Roger Manu Bates' possession on Maui on May 13, 2005 (from Subject Parcel #1)**:

| Drug Ex.#: | Where Found: | Controlled Substance: | Net Wgt: | Purity: | Pure Drug Wgt: |
|---|---|---|---|---|---|
| 1 | Backpack | d-Methamphetamine HCl | 443.1 gm | 91% | 403.2 gm |
| 2 | Thermos | d-Methamphetamine HCl | 166.2 gm | 93% | 154.5 gm |
| 3 | Backpack | d-Methamphetamine HCl | 7.5 gm | 88% | 6.6 gm |
| | AGGREGATE NET AMOUNTS: | | **616.8 gm** | | **564.3 gm** |

II. **Methamphetamine found in defendant Reed Kaleookalani Aken's possession at the Los Angeles International Airport on May 28, 2005**:

| Drug Ex.#: | Where Found: | Controlled Substance: | Net Wgt: | Purity: | Pure Drug Wgt: |
|---|---|---|---|---|---|
| 1 | Body-carried | d-Methamphetamine HCl | 921.1 gm | 83% | 764.5 gm |

III. **Methamphetamine found in Subject Parcel #2 on June 9, 2005**:

| Drug Ex.#: | Controlled Substance: | Net Wgt: | Purity: | Pure Drug Wgt: |
|---|---|---|---|---|
| 4a-e | d-Methamphetamine HCl | 1,809 gm | 79% | 1,429.0 gm |
| AGGREGATE AMOUNTS OF METHAMPHETAMINE FOUND IN THE POSSESSION OF BATES, REED AKEN, AND IN SUBJECT PARCEL #2: | | **3,346.9 gm** | | **2,757.8 gm** |

d-Methamphetamine Hydrochloride ("HCl") is a methamphetamine salt and a Schedule II controlled substance. For equivalency

10

purposes, there are about 28.35 grams in one ounce, and approximately 453.6 grams in one pound.

    b. <u>Offense level stipulations</u>:

    (1) Given the quantity of methamphetamine involved in the offense of conviction, as described in the preceding subparagraph, defendant's Base Offense Level is "38" (1½ KG or more of "ice" and/or methamphetamine (actual)). <u>See</u> Guideline 2D1.1(c)(1)).

    (2) Defendant also agrees that she is an organizer, leader, manager, or supervisor in a criminal activity within the meaning of Guideline 3B1.1(c), for which a two-level increase must be assessed.

    c. The United States Attorney agrees that Defendant's agreement herein to enter into a guilty plea constitutes notice of intent to plead guilty in a timely manner, so as to permit the government to avoid preparing for trial as to Defendant. Accordingly, the United States Attorney anticipates moving in the Government's Sentencing Statement for a one-level reduction in sentencing offense level pursuant to Guideline § 3E1.1(b)(2), if defendant is otherwise eligible. The Defendant understands that notwithstanding its present intentions, and still within the Agreement, the prosecution reserves the rights (1) to argue to the contrary in the event of receipt of new information relating to those issues, and (2) to

call and examine witnesses on those issues in the event that either the probation office finds to the contrary of the prosecution's intentions or the Court requests that evidence be presented on those issues.

11. The parties agree that notwithstanding the parties' Agreement herein, the Court is not bound by any stipulation entered into by the parties but may, with the aid of the presentence report, determine the facts relevant to sentencing.

12. The parties are presently unaware of any factual disputes affecting the sentencing of defendant herein.

13. The Defendant is aware that she has the right to appeal the sentence imposed under Title 18, United States Code, Section 3742(a). Defendant knowingly waives the right to appeal, except as indicated in subparagraph "b" below, any sentence within the maximum provided in the statute(s) of conviction or the manner in which that sentence was determined on any of the grounds set forth in Section 3742, or on any ground whatever, in exchange for the concessions made by the prosecution in this plea agreement.

   a. The Defendant also waives her right to challenge her sentence or the manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255, except

that defendant may make such a challenge (1) as indicated in subparagraph "b" below, or (2) based on a claim of ineffective assistance of counsel.

        b.  If the Court imposes a sentence greater than specified the guideline range determined by the Court to be applicable to the Defendant, the Defendant retains the right to appeal the portion of his sentence greater than specified in that guideline range and the manner in which that portion was determined under Section 3742 and to challenge that portion of his sentence in a collateral attack.

        c.  The prosecution retains its right to appeal the sentence and the manner in which it was determined on any of the grounds stated in Title 18, United States Code, Section 3742(b).

        14.  The Defendant understands that the District Court in imposing sentence will consider the provisions of the Sentencing Guidelines.  Subject to the exceptions noted in the previous paragraph, the Defendant is surrendering her right to challenge any sentence within the statutory maximum, or the manner in which it was determined, including, but not limited to, a sentence that the Defendant perceives to be an incorrect application of the Guidelines.  The Defendant further agrees that there is no promise or guarantee of the applicability or nonapplicability of any Guideline or any portion thereof,

notwithstanding any representations or predictions from any source.

15. The Defendant understands that pursuant to Guideline 6B1.1(c), this Agreement cannot be accepted or rejected by the Court until there has been an opportunity by the Court to consider a presentence report, unless the Court decides that a presentence report is unnecessary pursuant to Guideline 6A1.1. The Defendant understands that the Court will not accept an agreement unless the Court determines that the remaining charges adequately reflect the seriousness of the actual offense behavior and accepting the agreement will not undermine the statutory purposes of sentencing.

16. Defendant understands that by pleading guilty she surrenders certain rights, including the following:

    a. If Defendant persisted in a plea of not guilty to the charges against her she would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by a judge sitting without a jury. The Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the Defendant, the prosecution and the judge all must agree that the trial be conducted by the judge without a jury.

    b. If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant

and her attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the Defendant is presumed innocent, and that it could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt.

    c. If the trial is held by a judge without a jury, the judge would find the facts and determine, after hearing all the evidence, whether or not he or she was persuaded of the Defendant's guilt beyond a reasonable doubt.

    d. At a trial, whether by a jury or a judge, the prosecution would be required to present its witnesses and other evidence against the Defendant. Defendant would be able to confront those prosecution witnesses and her attorney would be able to cross-examine them. In turn, Defendant could present witnesses and other evidence on her own behalf. If the witnesses for the Defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court.

    e. At a trial, the Defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her

refusal to testify.

  f. At a trial, Defendant would have a right to have the jury determine beyond a reasonable doubt the quantity and weight of the controlled substances charged in the Indictment.

  17. Defendant understands that by pleading guilty, she is waiving all of the rights set forth in the preceding paragraph. Defendant's attorney has explained those rights to her, and the consequences of the waiver of those rights.

  18. Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreement reached, other than those set forth in this Agreement, to induce Defendant to plead guilty.

  19. Should the Court refuse to accept this Agreement, it is null and void and neither party shall be bound thereto. The parties understand that the Court's rejection of any stipulation between the parties does not constitute a refusal to accept this Agreement since the Court is expressly not bound by stipulations between the parties.

  20. Defendant understands that the prosecution will apprise the Court and the United States Probation Office of the nature, scope and extent of Defendant's conduct regarding the charges against her, related matters, and any matters in aggravation or mitigation relevant to the issues involved in

sentencing.

  21. The Defendant agrees that she will fully cooperate with the United States.

  a. She agrees to testify truthfully at any and all trials, hearings, or any other proceedings at which the prosecution requests her to testify in connection with this and other cases, including, but not limited to, any grand jury proceedings, trial proceedings involving co-defendants and others indicted later in this and other investigations, and related civil proceedings, as well as all other criminal cases in which she has assisted law enforcement authorities.

  b. Defendant agrees to be available to speak with law enforcement officials and to representatives of the United States Attorney's Office of the District of Hawaii at any time and to give truthful and complete answers at such meetings, but she understands she may have her counsel present at those conversations, if she so desires.

  c. Defendant agrees she will not assert any privilege to refuse to testify at any grand jury, trial, or other proceeding, involving or related to the crime in this case or any subsequent charges related to the investigation in this case, at which the prosecution requests her to testify.

  d. Pursuant to § 1B1.8(a) of the Sentencing Guidelines, the prosecution agrees that self-incriminating

information provided pursuant to this Agreement to cooperate will not be used in determining the applicable guideline range, except as may be provided in this Agreement and under § 1B1.8(b) of the Sentencing Guidelines.

    e. Defendant shall not violate any Federal, State or local laws.

  22. In the event that the Defendant does not breach any of the terms of this Agreement but the Court nonetheless refuses to accept the Agreement after Defendant has made statements to law enforcement authorities or representatives of the United States Attorney's Office pursuant to this Agreement, the prosecution agrees not to use said statements in its case in chief in the trial of the Defendant in this matter. Defendant understands that this does not bar the use of information and evidence derived from said statements or prohibit the use of the statements by the prosecution in cross-examination or rebuttal.

  23. Pursuant to Guideline Section 5K1.1 and Rule 35(b), Federal Rules of Criminal Procedure, the prosecution may move the Court to depart from the Guidelines on the ground that the Defendant has provided substantial assistance to authorities in the investigation or prosecution of another person who has committed an offense. Pursuant to Title 18, United States Code, Section 3553(e), the prosecution may also move the Court to impose a sentence below the level established by statute as a

minimum sentence for the charge in the Indictment in the Hawaii case on the ground that Defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense. Defendant understands that:

    a. The decision as to whether to make such a request or motion is entirely up to the prosecution.

    b. This Agreement does not require the prosecution to make such a request or motion.

    c. This Agreement confers neither any right upon the Defendant to have the prosecution make such a request or motion, nor any remedy to Defendant in the event the prosecution fails to make such a request or motion.

    d. Even in the event that the prosecution makes such a request or motion, the Court may refuse to depart from the Guidelines or to impose a sentence below the minimum level

established by statute.

        DATED: Honolulu, Hawaii, January 24, 2006.

AGREED:

_____  
EDWARD H. KUBO, JR.  
United States Attorney  
District of Hawaii

_____  
PAMELA MAHEALANI NEWTON  
Defendant

_____  
LARRY L. BUTRICK  
Chief, Criminal Division

_____  
LYNN E. PANAGAKOS  
Attorney for Defendant

_____  
MICHAEL K. KAWAHARA  
Assistant U.S. Attorney