*Criminal 05 00300 jms-03 USA vs Pamela Newton*

# Ethical Principles of Psychologists and Code Of Conduct
## 2002

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

OCT 25 2007

at ____ c'clock and ____ min. ____ M.
SUE BEITIA, CLERK

History and Effective Date Footnote

## CONTENTS

INTRODUCTION AND APPLICABILITY

PREAMBLE

GENERAL PRINCIPLES

Principle A: Beneficence and
    Nonmaleficence
Principle B: Fidelity and
    Responsibility
Principle C: Integrity
Principle D: Justice
Principle E: Respect for People's
    Rights and Dignity

ETHICAL STANDARDS

1.  Resolving Ethical Issues
1.01 Misuse of Psychologists' Work
1.02 Conflicts Between Ethics and
Law, Regulations, or Other
Governing Legal Authority
1.03 Conflicts Between Ethics and
Organizational Demands
1.04 Informal Resolution of Ethical
Violations
1.05 Reporting Ethical Violations
1.06 Cooperating With Ethics
Committees
1.07 Improper Complaints
1.08 Unfair Discrimination Against
Complainants and Respondents

2.  Competence
2.01 Boundaries of Competence
2.02 Providing Services in
Emergencies
2.03 Maintaining Competence
2.04 Bases for Scientific and
Professional Judgments
2.05 Delegation of Work to Others
2.06 Personal Problems and Conflicts

3.  Human Relations
3.01 Unfair Discrimination
3.02 Sexual Harassment
3.03 Other Harassment
3.04 Avoiding Harm
3.05 Multiple Relationships
3.06 Conflict of Interest
3.07 Third-Party Requests for
Services
3.08 Exploitative Relationships
3.09 Cooperation With Other
Professionals
3.10 Informed Consent
3.11 Psychological Services
Delivered To or Through
Organizations

3.12 Interruption of Psychological
Services

4.  Privacy And Confidentiality
4.01 Maintaining Confidentiality
4.02 Discussing the Limits of
Confidentiality
4.03 Recording
4.04 Minimizing Intrusions on Privacy
4.05 Disclosures
4.06 Consultations
4.07 Use of Confidential Information
for Didactic or Other Purposes

5.  Advertising and Other Public
    Statements
5.01 Avoidance of False or Deceptive
Statements
5.02 Statements by Others
5.03 Descriptions of Workshops and
Non-Degree-Granting Educational
Programs
5.04 Media Presentations
5.05 Testimonials
5.06 In-Person Solicitation

6.  Record Keeping and Fees
6.01 Documentation of Professional
and Scientific Work and Maintenance
of Records
6.02 Maintenance, Dissemination,
and Disposal of Confidential Records
of Professional and Scientific Work
6.03 Withholding Records for
Nonpayment
6.04 Fees and Financial
Arrangements
6.05 Barter With Clients/Patients
6.06 Accuracy in Reports to Payors
and Funding Sources
6.07 Referrals and Fees

7.  Education and Training
7.01 Design of Education and
Training Programs
7.02 Descriptions of Education and
Training Programs
7.03 Accuracy in Teaching
7.04 Student Disclosure of Personal
Information
7.05 Mandatory Individual or Group
Therapy
7.06 Assessing Student and
Supervisee Performance
7.07 Sexual Relationships With
Students and Supervisees

8.  Research and Publication
8.01 Institutional Approval
8.02 Informed Consent to Research
8.03 Informed Consent for Recording
Voices and Images in Research
8.04 Client/Patient, Student, and
Subordinate Research Participants
8.05 Dispensing With Informed
Consent for Research
8.06 Offering Inducements for
Research Participation
8.07 Deception in Research
8.08 Debriefing
8.09 Humane Care and Use of
Animals in Research
8.10 Reporting Research Results
8.11 Plagiarism
8.12 Publication Credit
8.13 Duplicate Publication of Data
8.14 Sharing Research Data for
Verification
8.15 Reviewers

9.  Assessment
9.01 Bases for Assessments
9.02 Use of Assessments
9.03 Informed Consent in
Assessments
9.04 Release of Test Data
9.05 Test Construction
9.06 Interpreting Assessment Results
9.07 Assessment by Unqualified
Persons
9.08 Obsolete Tests and Outdated
Test Results
9.09 Test Scoring and Interpretation
Services
9.10 Explaining Assessment Results
9.11. Maintaining Test Security

10.  Therapy
10.01 Informed Consent to Therapy
10.02 Therapy Involving Couples or
Families
10.03 Group Therapy
10.04 Providing Therapy to Those
Served by Others
10.05 Sexual Intimacies With Current
Therapy Clients/Patients
10.06 Sexual Intimacies With
Relatives or Significant Others of
Current Therapy Clients/Patients
10.07 Therapy With Former Sexual
Partners
10.08 Sexual Intimacies With Former
Therapy Clients/Patients
10.09 Interruption of Therapy
10.10 Terminating Therapy



DEFENDANT'S
EXHIBIT
1

**8.14 Sharing Research Data for Verification**
(a) After research results are published, psychologists do not withhold the data on which their conclusions are based from other competent professionals who seek to verify the substantive claims through reanalysis and who intend to use such data only for that purpose, provided that the confidentiality of the participants can be protected and unless legal rights concerning proprietary data preclude their release. This does not preclude psychologists from requiring that such individuals or groups be responsible for costs associated with the provision of such information.

(b) Psychologists who request data from other psychologists to verify the substantive claims through reanalysis may use shared data only for the declared purpose. Requesting psychologists obtain prior written agreement for all other uses of the data.

**8.15 Reviewers**
Psychologists who review material submitted for presentation, publication, grant, or research proposal review respect the confidentiality of and the proprietary rights in such information of those who submitted it.

**9.   Assessment**

**9.01 Bases for Assessments**
(a) Psychologists base the opinions contained in their recommendations, reports, and diagnostic or evaluative statements, including forensic testimony, on information and techniques sufficient to substantiate their findings. (See also Standard 2.04, Bases for Scientific and Professional Judgments.)

(b) Except as noted in 9.01c, psychologists provide opinions of the psychological characteristics of individuals only after they have conducted an examination of the individuals adequate to support their statements or conclusions. When, despite reasonable efforts, such an examination is not practical, psychologists document the efforts they made and the result of those efforts, clarify the probable impact of their limited information on the reliability and validity of their opinions, and appropriately limit the nature and extent of their conclusions or recommendations. (See also Standards 2.01, Boundaries of Competence, and 9.06, Interpreting Assessment Results.)

(c) When psychologists conduct a record review or provide consultation or supervision and an individual examination is not warranted or necessary for the opinion, psychologists explain this and the sources of information on which they based their conclusions and recommendations.

**9.02 Use of Assessments**
(a) Psychologists administer, adapt, score, interpret, or use assessment techniques, interviews, tests, or instruments in a manner and for purposes that are appropriate in light of the research on or evidence of the usefulness and proper application of the techniques.

(b) Psychologists use assessment instruments whose validity and reliability have been established for use with members of the population tested. When such validity or reliability has not been established, psychologists describe the strengths and limitations of test results and interpretation.

(c) Psychologists use assessment methods that are appropriate to an individual's language preference and competence, unless the use of an alternative language is relevant to the assessment issues.

**9.03 Informed Consent in Assessments**
(a) Psychologists obtain informed consent for assessments, evaluations, or diagnostic services, as described in Standard 3.10, Informed Consent, except when (1) testing is mandated by law or governmental regulations; (2) informed consent is implied because testing is conducted as a routine educational, institutional, or organizational activity (e.g., when participants voluntarily agree to assessment when applying for a job); or (3) one purpose of the testing is to evaluate decisional capacity. Informed consent includes an explanation of the nature and purpose of the assessment, fees, involvement of third parties, and limits of confidentiality and sufficient opportunity for the client/patient to ask questions and receive answers.

(b) Psychologists inform persons with questionable capacity to consent or for whom testing is mandated by law or governmental regulations about the nature and purpose of the proposed assessment services, using language that is reasonably understandable to the person being assessed.

(c) Psychologists using the services of an interpreter obtain informed consent from the client/patient to use that interpreter, ensure that confidentiality of test results and test security are maintained, and include in their recommendations, reports, and diagnostic or evaluative statements, including forensic testimony, discussion of any limitations on the data obtained. (See also Standards 2.05, Delegation of Work to Others; 4.01, Maintaining Confidentiality; 9.01, Bases for Assessments; 9.06, Interpreting Assessment Results; and 9.07, Assessment by Unqualified Persons.)

*Law and Human Behavior, Vol. 15, No. 6, 1991*

# Specialty Guidelines for Forensic Psychologists'

## Committee on Ethical Guidelines for Forensic Psychologists[2]

*The Specialty Guidelines for Forensic Psychologists,* while informed by the *Ethical Principles of Psychologists* (APA, 1990) and meant to be consistent with them, are designed to provide more specific guidance to forensic psychologists in monitoring their professional conduct when acting in assistance to courts, parties to legal proceedings, correctional and forensic mental health facilities, and legislative agencies. The primary goal of the Guidelines is to improve the quality of forensic psychological services offered to individual clients and the legal system and thereby to enhance forensic psychology as a discipline and profession. The *Specialty Guidelines for Forensic Psychologists* represent a joint statement of the American Psychology-Law Society and Division 41 of the American Psycholog-

The *Specialty Guidelines for Forensic Psychologists were adopted by* majority vote of the members of Division *41* and the American Psychology-Law Society. They have also been endorsed by majority vote by the American Academy of Forensic Psychology. The Executive Committee of Division *41* and the American Psychology Law Society formally approved these *Guidelines on March 9, 1991.* The Executive Committee also voted to continue the Committee on Ethical Guidelines in order to disseminate the *Guidelines* and to monitor their implementation and suggestions for revision. Individuals wishing to reprint these *Guidelines* or who have queries about them should contact either Stephen L. Golding, Ph.D., Department of Psychology, University of Utah, Salt Lake City, UT *84112*, 80 l-58 1-8028 (voice) or 80 1-581-5841 (FAX) or other members of the Committee listed below. Reprint requests should be sent to Cathy Oslzly, Department of Psychology, University of Nebraska-Lincoln, Lincoln, NE 68588-0308.

[2] These Guidelines were prepared and principally authored by a joint Committee on Ethical Guidelines of Division *41* and the American Academy of Forensic-Psychology (Stephen L. Golding, [Chair], Thomas Grisso, David Shapiro, and Herbert Weissman [Co-chairs]). Other members of the Committee included Robert Fein, Kirk Heilbrun, Judith McKenna, Norman Poythress, and Daniel Schuman. Their hard work and willingness to tackle difficult conceptual and pragmatic issues is gratefully acknowledged. The Committee would also like to acknowledge specifically the assistance and guidance provided by Dort Bigg, Larry Cowan, Eric Harris, Arthur Lerner, Michael Miller, Russell Newman, Melvin Rudov, and Ray Fowler. Many other individuals also contributed by their thoughtful critique and suggestions for improvement of earlier drafts which were widely circulated.

0147-7307/91/1200-0655$06.50/0 © 1991 Plenum Publishing   Corporation

ical Association and are endorsed by the American Academy of Forensic Psychology. The *Guidelines* do not represent an official statement of the American Psychological Association.

The Guidelines provide an aspirational model of desirable professional practice by psychologists, within any subdiscipline of psychology (e.g., clinical, developmental, social, experimental), when they are engaged regularly as experts and represent themselves as such, in an activity primarily intended to provide professional psychological expertise to the judicial system. This would include, for example, clinical forensic examiners; psychologists employed by correctional or forensic mental health systems; researchers who offer direct testimony about the relevance of scientific data to a psycholegal issue; trial behavior consultants; psychologists engaged in preparation of *amicus* briefs; or psychologists, appearing as forensic experts, who consult with, or testify before, judicial, legislative, or administrative agencies acting in an adjudicative capacity. Individuals who provide only occasional service to the legal system and who do so without representing themselves as *forensic experts* may find these *Guidelines* helpful, particularly in conjunction with consultation with colleagues who are forensic experts.

While the *Guidelines* are concerned with a model of desirable professional practice, to the extent that they may be construed as being applicable to the advertisement of services or the solicitation of clients, they are intended to prevent false or deceptive advertisement or solicitation, and should be construed in a manner consistent with that intent.

## I.    PURPOSE AND SCOPE

### A. Purpose

1. While the professional standards for the ethical practice of psychology, as a general discipline, are addressed in the American Psychological Association's *Ethical Principles of Psychologists,* these ethical principles do not relate, in sufficient detail, to current aspirations of desirable professional conduct for forensic psychologists. By design, none of the *Guidelines* contradicts any of the *Ethical Principles of Psychologists;* rather, they amplify those *Principles* in the context of the practice of forensic psychology, as herein defined.
2. The *Guidelines* have been designed to be national in scope and are intended to conform with state and Federal law. In situations where the forensic psychologist believes that the requirements of law are in conflict with the *Guidelines,* attempts to resolve the conflict should be made in accordance with the procedures set forth in these *Guidelines* [IV(G)] and in the *Ethical Principles of Psychologists.*

### B. Scope

1. The *Guidelines* specify the nature of desirable professional practice by forensic psychologists, within any subdiscipline of psychology

statements, nor any other fruits of the statements can be admitted into evidence against the defendant in any criminal proceeding, except on an issue respecting mental condition on which the defendant has introduced testimony. Forensic psychologists have an affirmative duty to ensure that their written products and oral testimony conform to this Federal Rule of Procedure (12.2[c]), or its state equivalent.

1. Because forensic psychologists are often not in a position to know what evidence, documentation, or element of a written product may be or may lend to a "fruit of the statement," they exercise extreme caution in preparing reports or offering testimony prior to the defendant's assertion of a mental state claim or the defendant's introduction of testimony regarding a mental condition. Consistent with the reporting requirements of state or federal law, forensic psychologists avoid including statements from the defendant relating to the time period of the alleged offense,

2. Once a defendant has proceeded to the trial stage, and all pretrial mental health issues such as competency have been resolved, forensic psychologists may include in their reports or testimony any statements made by the defendant that are directly relevant to supporting their expert evidence, providing that the defendant has "introduced" mental state evidence or testimony within the meaning of Federal Rule of Procedure 12.2(c), or its state equivalent.

H  Forensic psychologists avoid giving written or oral evidence about the psychological characteristics of particular individuals when they have not had an opportunity to conduct an examination of the individual adequate to the scope of the statements, opinions, or conclusions to be issued. Forensic psychologists make every reasonable effort to conduct such examinations. When it is not possible or feasible to do so, they make clear the impact of such limitations on the reliability and validity of their professional products, evidence, or testimony.

## VII. PUBLIC AND PROFESSIONAL COMMUNICATIONS

A, Forensic psychologists make reasonable efforts to ensure that the products of their services, as well as their own public statements and professional testimony, are communicated in ways that will promote understanding and avoid deception, given the particular characteristics, roles, and abilities of various recipients of the communications.

1. Forensic psychologists take reasonable steps to correct misuse or misrepresentation of their professional products, evidence, and testimony .

2. Forensic psychologists provide information about professional work to clients in a manner consistent with professional and legal standards